**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
BANKRUPTCY DIVISION - ST. CROIX**

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| KIPPY GORDON ROBERSON, | ) |
| | ) |
| Debtor. | ) Case No. 1:14-bk-10007-MFW |
| | ) |
| | ) |
| JOSEPH THOMAS and | ) |
| INGRID THOMAS-JACKSON, | ) |
| Individually and as Personal | ) |
| Representatives of the Estate | ) |
| of Gilbert Thomas, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. No. 1:14-ap-01002-MFW |
| | ) |
| KIPPY GORDON ROBERSON, | ) |
| | ) |
| Defendant. | ) Rel. Docs. 1, 4, 92, 93 |
| | ) |

## **OPINION**[1]

Before the Court is the Complaint filed by Joseph Thomas and Ingrid Thomas Jackson (the "Plaintiffs"), to except their claim from discharge under section 523(a)(2)(A) of the Bankruptcy Code (the "Code"). The Plaintiffs alternatively seek denial of the Debtor's discharge under section 727(a)(4)(A) of the Code. After a trial on the merits and for the reasons set forth below, the Court concludes that the Plaintiffs' claim should be excepted from discharge, but that the Debtor's general discharge should not be denied.

---

[1] This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

I.  BACKGROUND

The background to this adversary proceeding is set forth in the Court's Opinion dated May 15, 2017, granting in part the Debtor's Motion for Summary Judgment on the Plaintiffs' Complaint.  (Adv. D.I. 24.)  A summary of those findings of fact are stated below.

On April 18, 2008, the Debtor was dining at the Smugglers' Cove where the Plaintiffs' son, Gilbert Thomas, was employed.  During the evening, an altercation between Thomas and his employer ensued and spilled into the dining area.  The Debtor intervened on the owner's behalf and restrained Thomas.  Thomas subsequently went into the kitchen and returned carrying a knife.  When he refused to drop the knife, the Debtor, who had a permit to carry a concealed handgun, shot and killed him.  (Adv. D.I. 95 at 8-9, 48-49, & 81-82.)  Tragically, Thomas stumbled out of the restaurant and died near the gate where his mother was waiting to drive him home.

The Plaintiffs filed a civil suit against the Debtor for the wrongful death of their son.  (Id. at 49.)  The Debtor contended that he acted in self-defense.  Three weeks before the scheduled trial, the parties reached a mediated settlement (the "Settlement") in which the Debtor agreed to pay the Plaintiffs $100,000 beginning with a $5,000 deposit by January 17, 2014, and $625 per month under a wage garnishment agreement, beginning

2

March 2014.  (Ex. P-2.)  The District Court entered a Consent Judgment and dismissed the case.  (Ex. P-13.)  The Debtor did not, however, sign the Consent of Garnishment or make any of the payments required by the Settlement.  (Ex. P-6; Adv. D.I. 94 at 20; Adv. D.I. 95 at 84.)  The Plaintiffs subsequently filed a Motion to Enforce the Consent Judgment.  (Ex. P-14.)

Shortly before the hearing on the Motion to Enforce, the Debtor filed a petition under chapter 7 of the Code.  On August 28, 2014, the Plaintiffs filed a complaint seeking to except their $100,000 claim from the Debtor's discharge under section 523(a)(2)(A) or, alternatively, to deny the Debtor's discharge in full under section 727(a)(4)(A).  (Adv. D.I. 1.)

Because the Court concluded that material facts were in dispute, a trial was held on January 21 and 22, 2021.  At the conclusion of the trial, the Court granted the parties' request for leave to file post-trial briefs.  Briefing was completed on March 9, 2021, and the matter is ripe for decision.  (Adv. D.I. 92 & 93.)

II.  <u>JURISDICTION</u>

The Court has jurisdiction over this adversary proceeding, which involves a determination of the dischargeability of a debt and the Debtor's entitlement to a general discharge.  28 U.S.C. §§ 1334 & 157(b)(1), (b)(2)(I), & (b)(2)(J).  The claims "stem[]

3

from the bankruptcy itself" and may constitutionally be decided by a final order of the bankruptcy court. Stern v. Marshall, 564 U.S. 462, 499 (2011).

III. DISCUSSION

    A.    Burden of Proof

The grant of a discharge in bankruptcy is liberally construed in favor of the debtor, while denial of a discharge (or exceptions to the discharge) are strictly construed against creditors. See In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995) (considering objection to discharge under § 523(a)); Rosen v. Bezner, 996 F.2d 1527, 1531 (3d Cir. 1993) (considering denial of discharge under § 727(a)). Under both section 523(a)(2)(A) and section 727(a)(4)(A), the objecting creditor bears the burden of proving the elements of nondischargeability by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 286-89 (1991) (stating burden of proof under § 523(a)); Premier Capital, LLC v. Crawford (In re Crawford), 841 F.3d 1, 7 (1st Cir. 2016) (stating burden of proof under § 727(a)); Carroll v. Prosser (In re Prosser), No. Adv. 08-3011-JKF, 2012 WL 6737781, at *24 (Bankr. D.V.I. Dec. 20, 2012) (stating burden of proof under § 727(a)).

    B.    Analysis

        1.    Section 727(a)(4)(A)

            a.    Standard of Review

A debtor may be denied a discharge, inter alia, if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."  11 U.S.C. § 727(a)(4)(A).  To be successful, the plaintiff must demonstrate that: "(1) the debtor made a false statement under oath; (2) the debtor knew the statement was false; (3) the debtor made the statement with the intent to deceive; and (4) the statement was material to the bankruptcy case."  <u>Giansante & Cobb, LLC v. Singh (In re Singh)</u>, 433 B.R. 139, 154 (Bankr. E.D. Pa. 2010).  A debtor's undervaluation of assets listed on the bankruptcy schedules may form the basis to deny his/her discharge under section 727(a)(4)(A).  See <u>Robinson v. Worley</u>, 849 F.3d 577, 587 (4th Cir. 2017).

      b.   <u>Parties' Arguments</u>

The Plaintiffs contend that the Debtor "knowingly and fraudulently" undervalued his residence in connection with his bankruptcy filing as part of a scheme to avoid paying the debt owed on the Settlement, which constitutes a false oath under section 727(a)(4)(A).  The Plaintiffs note that the Debtor had an appraisal of his residence done six months before the bankruptcy filing, which stated its value was $430,000 (the "2013 Appraisal"), but the Debtor stated the property was only worth $390,000 in his bankruptcy schedules.  (Adv. D.I. 95 at 73.)  The Plaintiffs argue that the Debtor's figure is clearly an

undervaluation, as it is equal to the amount of the construction loan he obtained in 2009 to build the residence. (Id. at 50:19-23.) The Plaintiffs further contend that the Debtor's fraudulent intent is evident from his testimony that he ". . . placed the value as high as [he] could and still be within the guidelines in the schedules . . . ." (Id. at 74.)

The Debtor responds that he had a rational basis for disregarding the 2013 Appraisal and valuing the property at $390,000. (Id. at 73-74.) The Debtor testified that the $430,000 appraisal overvalued his residence, because the comparable properties it used were in nicer neighborhoods with more amenities. (Id.) Instead, he relied on a realtor's market report that showed there had been a 30% drop in the market value of homes on St. Croix between 2010 and 2014 because of the loss of the island's largest employer. (Id. at 108-09.)

### c.    Conclusions

The Court concludes that the Debtor did not knowingly and fraudulently undervalue his residence on the bankruptcy schedules. The Court finds the Debtor's testimony about the basis for his valuation in the schedules to be credible and valid. The $390,000 figure that the Debtor used was within the "median comparable sale price" range in the 2013 Appraisal report for recent homes sold in the St. Croix market. (Ex. P-70.) Further, the 2013 Appraisal itself stated that at that time, "it

[was] too soon to quantify[ ] [t]he longterm effects of the closing . . ." of the HOVENSA Oil Refinery, in February 2012, which had served as "a major St. Croix employer for the past forty years." (Id.) This fact was corroborated by the Debtor's witness, Juliet San Martin, a longtime realtor and resident of St. Croix, who testified about the depressed effect on the real estate market caused by the closing of the refinery. (Adv. D.I. 95 at 109.)

Even if the Debtor had under-valued his property in his bankruptcy schedules, the Court concludes that it was not material to the case. The property had a mortgage on the property totaling $372,000. Further, the Debtor owned the property with his wife as tenants by the entirety. (Ex. D-3.) Upon liquidation in a bankruptcy case, a non-debtor spouse is entitled to half of the net sale proceeds. 11 U.S.C. 363(j). See, e.g., Garner v. Strauss (In re Garner), 952 F.2d 232, 235-36 (8th Cir. 1991); Sparkman v. Chase Manhattan Mortgage Corp. (In re Rambo), 297 B.R. 418, 434-35 (Bankr. E.D. Pa. 2003) (calculating estate's recovery in the hypothetical liquidation of a tenancy by the entirety). The Debtor elected the federal exemptions and, therefore, was entitled to an exemption of $22,950 in his share of the equity. 11 U.S.C. §§ 522(b)(2) & (d)(1). Thus, after payment of the mortgage ($372,000), costs of sale (approximately $28,000), and his wife's share ($15,000), the

net proceeds of sale of that property even if it was sold for $430,000 would not have exceeded the Debtor's claimed exemption of $22,950. Therefore, the estate would not have realized any value from that property. Cf., Waldschmidt v. Hamilton (In re Hamilton), 32 B.R. 337, 341 (Bankr. M.D. Tenn. 1983) (holding that trustee can liquidate estate's undivided interest in tenancy by entirety under § 363(h), if the debtor's equity interest exceeds the claimed exemption).

Consequently, the Court concludes that the Debtor did not fraudulently under-report his home value on his bankruptcy schedules. As a result, the Court concludes that denial of the Debtor's general discharge is not warranted under section 727(a)(4)(A).

2. Section 523(a)(2)(A)

a. Standard of Review

Section 523(a)(2)(A) excepts from a debtor's general discharge any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

The Third Circuit stated that to establish nondischargeability based on false pretenses or false representations under section 523(a)(2)(A), a creditor must demonstrate by a preponderance of the evidence that:

8

>  (1) the debtor obtained money, property or services through a material misrepresentation; (2) the debtor, at the time, knew the representation was false or made with gross recklessness as to its truth; (3) the debtor intended to deceive the creditor; (4) the creditor reasonably relied on the debtor's false representations; and (5) the creditor sustained a loss and damages as a proximate result of the debtor's materially false representations.

In re Bocchino, 794 F.3d 376, 380 (3d Cir. 2015) (quoting In re Cohen, 191 B.R. 599, 604 (D.N.J. 1996)).  The Supreme Court, however, has held that only justifiable reliance, and not the heightened reasonable reliance standard, need be met.  Field v. Mans, 516 U.S. 59, 70-71 (1995).

> b.  Parties' Arguments

The Plaintiffs argue that the Debtor obtained a settlement of their wrongful death action through false pretenses, false representations, and actual fraud making it nondischargeable under section 523(a)(2)(A).[2]  "False pretenses involve implied misrepresentations or conduct creating and fostering a false impression.  False representations, on the other hand, involve express misrepresentations."  In re Hendry, 428 B.R. 68, 79-80 (Bankr. D. Del. 2010).

The Plaintiffs contend that a misrepresentation about one's intent to perform under an agreement constitutes a false

---

[2] Because the Court finds that the Debtor misrepresented his intention to repay and induced the Plaintiffs to enter into the Settlement under false pretenses, the Court need not address the Plaintiffs' other assertions of actual fraud under section 523(a)(2)(A).

9

representation. See, e.g., Gasunas v. Yotis (In re Yotis), 521 B.R. 625, 635 (Bankr. N.D. Ill. 2014) ("[F]ailure to honor one's promise is breach of contract, but making a promise that one intends not to keep is fraud.") (quoting U.S. ex rel. Main v. Oakland City Univ., 426 F.3d 914, 917 (7th Cir. 2005)); Mitchell v. Barnette (In re Barnette), 281 B.R. 869 (Bankr. W.D. Pa. 2002) (excepting debt arising from broken promise from discharge under § 523(a)(2)(A) where debtor failed to take any steps to perform under the contract). See also 4 Collier on Bankruptcy ¶ 523.08 (16th 2021). The Plaintiffs assert that the Debtor's intent to deceive can be inferred from the totality of the circumstances. Cohn, 54 F.3d at 1118-19. See also Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249, 252 (4th Cir. 1987) ("[A] determination concerning fraudulent intent depends largely on an assessment of the credibility and demeanor of the debtor . . . .").

The Plaintiffs testified that during negotiations, the Debtor stated that he would not file bankruptcy if a certain settlement amount was reached. (Adv. D.I. 94 at 7-8, 12, & 15-16.) They also argue that the fact that the Debtor failed to make *any* payments under the Settlement, despite obtaining a loan on his truck for that purpose, shows that he never intended to perform the Settlement. (Id. at 19, 20, 24; Adv. D.I. 95 at 59 & 69.) Further, they note that the Debtor delayed signing the Consent Judgment (until the District Court threatened to go

forward with the trial) and never signed the Consent of Garnishment (despite agreeing to it in the Settlement). (Exs. P-2, P-5, P-6, P-9, & P-13; Adv. D.I. 94 at 20; Adv. D.I. 95 at 84.) The Debtor did not attempt to renegotiate the payment terms and did not even notify the Plaintiffs when he filed for bankruptcy. (Adv. D.I. 94 at 25; Adv. D.I. 95 at 29-30.) Finally, the Debtor filed his bankruptcy petition after the Plaintiffs' pressed their Motion to Enforce the Consent Judgment. (Exs. P-14, P-16, & P-17.)

The Plaintiffs also argue that the Debtor fraudulently induced the Settlement, in part, because he was aware that the settlement of an intentional tort, as opposed to a judgment on the merits, would have no preclusive effect on a subsequent bankruptcy proceeding. The Plaintiffs note that the Debtor had handled chapter 7 bankruptcies in private practice between 1997 and 2007 and that he admitted researching the ability to discharge a settlement versus a judgment on a wrongful death claim. (Adv. D.I. 94 at 25; Adv. D.I. 95 at 71 & 80.)

The Debtor responds that he did not intend to deceive nor did he knowingly or with gross recklessness misrepresent anything in connection with the Settlement. While the Debtor admitted he researched whether the settlement of a wrongful death claim was dischargeable, he denied having done so before agreeing to the Settlement. (Adv. D.I. 95 at 80.) Further, he testified that

11

the Settlement was not based on any representation that he would abstain from filing for bankruptcy. (Id. at 71.) In fact, according to the Debtor, the topic of bankruptcy was never discussed. (Id.)

The Debtor further argues that he did not misrepresent his intention to pay the Settlement obligation. Rather, the Debtor contends that the representations he made were about his ability to pay or his "financial condition," which are not grounds for excepting a debt from discharge under section 523(a)(2)(A). See, e.g., Greater Pittsburgh Police Fed. Credit Union v. Hilley (In re Hilley), 124 F. App'x 81, 82-83 (3d Cir. 2005) (distinguishing between representations about one's ability to repay and one's intent to repay and holding that the former is irrelevant under § 523(a)(2)(A)).

The Debtor testified that his failure to pay resulted – not from an intent to deceive the Plaintiffs - but from a series of events that professionally and emotionally overwhelmed him after the execution of the Settlement. (Adv. D.I. 95 at 57, 63, 67, 69, & 94.) In particular, the Debtor testified that "within a week" of executing the Settlement, he was reassigned the prosecution of a five-defendant murder trial set to begin just five weeks later. (Adv. D.I. 94 at 22 & 24.) The Debtor testified that, during that trial, an attempt was made on his life, which prompted the appointment of a personal security

12

detail and the evacuation of his wife from the island for the duration of the trial. (Adv. D.I. 95 at 63 & 94.) He testified that these events caused him to have a nervous breakdown and to take a leave of absence from his job between February and June 2014. The Debtor testified that he failed to make a single payment on the Settlement, because he was struggling with his mental health and the aftershock of the trial, which ultimately caused him to file for bankruptcy. (Id. at 68-69.) He contends that the Plaintiffs' circumstantial evidence based solely on his failure to pay the Settlement is insufficient to meet their burden of proof. See, e.g., Nayyar v. Charles (In re Charles), 2019 WL 1757125, at *3 (Bankr. N.D.N.Y. April 15, 2019) ("A debtor's simple failure to perform according to the terms of an [agreement], without more, constitutes a breach of contract but does not satisfy the creditor's weighty burden under § 523(a)(2)(A).") (quoting Sparks v. King (In re King), 258 B.R. 786, 794 (Bankr. D. Mont. 2001)).

The Plaintiffs respond that despite the Debtor's protestations about being overwhelmed during and after prosecution of the murder trial, the Debtor was still able to maintain his daily chores and pay his other bills. (Ex. P-53; Adv. D.I. 94 at 45-47; Adv. D.I. 95 at 69 & 93.) They further question the Debtor's alleged stress, noting that the Debtor's psychologist, Dr. Wayne Etheridge, testified that he only met

with the Debtor five times over four months, and that his treatment focused only on improving the Debtor's sleep habits and communications with his wife. (Adv. D.I. 95 at 105.)

### c. Conclusions

After weighing the evidence presented, including the testimony of the Debtor, the Court concludes that the Debtor did not intend to pay the Settlement, at the time he agreed to it. See Cohn, 54 F.3d at 1118–19; Barnette, 281 B.R. at 875-76 (finding that failure to take any steps to perform under an agreement warranted grant of exception to the discharge).

This conclusion is based on the following facts. Before the Debtor was even assigned the murder trial, he failed to pay the mediator's bill or sign the Consent of Garnishment. (Adv. D.I. 94 at 22-24.) After the trial ended, he failed to make a single payment under the Settlement, despite obtaining a $10,000 loan on his vehicle to cover such payments and despite paying his other bills. (Id. at 19, 24; Adv. D.I. 95 at 59 & 69.) Further, the Debtor failed to respond to the Plaintiffs' Motion to Enforce the Settlement; never attempted to renegotiate the obligation; and failed to notify the Plaintiffs that he had filed for bankruptcy in June 2014, despite the upcoming hearing on the Motion to Enforce. (Exs. P-14, P-16, & P-17; Adv. D.I. 94 at 25; Adv. D.I. 95 at 30.) While the filing of a bankruptcy does not per se establish an intent to deceive, the Court finds that the timing

of the filing further supports its conclusion that the Debtor never intended to pay the Settlement.

Additionally, the Court concludes that the Debtor induced the Settlement, in part, because he knew that the settlement of an intentional tort could be discharged. If the Plaintiffs had obtained a jury verdict, the Debtor could have been collaterally estopped from contesting any complaint under section 523(a)(6), which excepts from discharge any debt for willful and malicious injury. 11 U.S.C. § 523(a)(6). See Grogan, 498 U.S. at 284 n.11 (holding that collateral estoppel applies in bankruptcy dischargeability proceedings under § 523(a)); In re Madsen, 195 F.3d 988, 990 (8th Cir. 1999) (holding state court judgment for intentional tort had preclusive effect in dischargeability proceeding under § 523(a)(6)).

In contrast, the settlement of such an action has no preclusive effect. See Graham v. I.R.S. (In re Graham), 973 F.2d 1089, 1097 (3d Cir. 1992) (holding that consent judgment lacked preclusive effect in nondischargeability proceeding, because the judgment lacked detailed findings of fact that would satisfy the necessary elements of § 523(a)(2)(A)); Town & Country Credit Union v. Honcharenko (In re Honcharenko), No. 99-30607, 1999 WL 33520532, at *3 (Bankr. D.N.D. Nov. 24, 1999) (same, under § 523(a)(6)). Moreover, there was no guarantee that the Plaintiffs would have filed a dischargeability complaint. 11 U.S.C. §

15

523(c)(1) (a debt of a kind specified in § 523(a)(6) is automatically discharged unless a timely request for an exception to dischargeability is made).

The Debtor admitted that he had handled chapter 7 bankruptcy filings in private practice, filed his own bankruptcy petition in this case, and was aware that intentional torts were nondischargeable. (Adv. D.I. 94 at 25; Adv. D.I. 95 at 58 & 80.) He further admitted that he knew that <u>settlements</u> of intentional torts could be discharged, notwithstanding that he denied acquiring that knowledge before the Settlement was reached. (Adv. D.I. 95 at 71 & 80.) The Court finds the denial lacking in credibility.

The Court also finds that the Debtor's testimony of his intent to pay the Settlement was not credible. For example, the Debtor provided multiple excuses as to why he never signed the garnishment order and never paid either the mediation bill or the first $5,000 down payment. (Adv. D.I. 94 at 24; Adv. D.I. 95 at 83-84.) The Debtor even tried to blame his attorney, Vincent Colianni, for not communicating with him about the garnishment order or the need to make payments under the Settlement, which Colianni disputed in his testimony. (Adv. D.I. 95 at 85.)

Based on the circumstantial evidence, including the lack of <u>any</u> payment on the settlement, the failure to sign the Consent of Garnishment, the proximity between the Settlement and the

bankruptcy petition, the absence of any attempt to renegotiate the Settlement obligation before filing bankruptcy, and the Debtor's awareness of the dischargeability of a settlement agreement in a wrongful death action, the Court finds that at the time the Debtor entered into the Settlement with the Plaintiffs, he did not intend to pay that obligation.

The Court further finds that the Debtor's entry into the Settlement constituted obtaining "money, property, services, or an extension, renewal, or refinancing of credit" within the meaning of section 523(a)(2)(A).  See Archer v. Warner, 538 U.S. 314, 318-19 (2003) (holding that a debt for money promised in a settlement agreement accompanied by the release of underlying tort claims can amount to a debt for money obtained by fraud under § 523(a)(2)(A)).

Finally, the Court finds that the Plaintiffs justifiably relied on the Debtor's misrepresentations.  Field, 516 U.S. at 70-71.  The Plaintiffs testified that they would not have entered into the Settlement had they known that the Debtor would not make any payments and would ultimately seek to discharge that debt in a bankruptcy case, just six months later.  (Adv. D.I. 94 at 9 & 15-16.)

Therefore, the Court concludes that the obligation owed to the Plaintiffs is excepted from the Debtor's discharge under section 523(a)(2)(A).

IV.   CONCLUSION

For the foregoing reasons, the Court will except the Plaintiffs' claim under the Settlement from the Debtor's discharge under section 523(a)(2)(A) but will not deny the Debtor's general discharge under section 727(a)(4)(A).

An appropriate Order is attached.


Dated: September 10, 2021     BY THE COURT:

                              _____
                              Mary F. Walrath
                              United States Bankruptcy Judge